***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. As of October 22, 1999, the employee-employer relationship existed between the Plaintiff-employee and the Defendant-employer.
3. As of October 22, 1999, the employer was insured with Insurance Company of the State of Pennsylvania/AIG Claims Services.
4. An IC Form 22 Statement of Wages Earned may be used to determine the Plaintiff's average weekly wage.
5. Plaintiff continued to work at his pre-injury wage following the alleged October 22, 1999 accident, except for a period of layoff from December 23, 1999 through January 2, 2000. On January 3, 2000, plaintiff returned to work at his pre-injury wage. His last day worked was April 23, 2000.
6. The issues before the Commission are as follows:
 (a.) Did the plaintiff suffer a compensable injury by accident arising out of and in the course of his employment?
 (b.) If so, did plaintiff suffer any disability within the meaning of the North Carolina Workers' Compensation Act?
 (c.) If so, what benefits, if any, is plaintiff entitled to recover under the Act?
 (d.) Plaintiff contends there is also an issue as to whether the care of Dr. Rawal is approved by the Commission.
 *********** EVIDENTIARY RULING
Plaintiff's motion to depose Dr. Suh who did not see plaintiff until nineteen months after his injury is in our discretion hereby DENIED. Plaintiff waited until the final hour before the record was to close before he saw Dr. Suh and sought to open the record to include Dr. Suh's deposition. The issue in this case is whether plaintiff sustained an injury and if so, the extent of injury, from the accident that occurred on October 22, 1999. Plaintiff was seen by numerous physicians, some of his choice, after the accident. Because their treatment was closer in time, those physicians were in a better position to determine the extent of the injury than a physician who did not see plaintiff for more than a year and a half after the accident. Although it is anticipated that Dr. Suh may be able to render an opinion as to plaintiff's condition at the time of examination, this question is not in dispute. Plaintiff has not shown how Dr. Suh would be in a better position to determine the cause of plaintiff's current condition given the length of time from the accident. The circumstances of plaintiff's referral to Dr. Suh, and the timing of the examination and proposed deposition, show that plaintiff was seeking another opinion concerning the nature of his injury only after the medical experts failed to support his theory. Plaintiff has failed to establish that the deputy commissioner abused her discretion and has failed to show good cause for adding a new medical expert.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT 1. On the hearing date before the Deputy Commissioner, plaintiff was 50 years of age, having a date of birth of May 7, 1950. He finished high school and has worked as a carpenter, doing framing and laying brick, as a mechanic in heating and air conditioning installation, and in sheet metal fabrication and installation, which has been his primary job focus since the early 1980s. Plaintiff is trained in sheet metal fabrication and has completed an apprenticeship. He is a dues-paying member of a Union, Local 5. Plaintiff had an average weekly wage of $915.79 which yields a compensation rate of $610.55. However, the maximum compensation rate for 1999 was $560.00.
2. On September 23, 1999, plaintiff began working for Defendant-employer as a sheet metal journeyman. Plaintiff was assigned to work with two others, Anvis Lockett and Mike Lynch at the Glaxo-Wellcome facility in Zebulon. They were responsible for the fabrication and installation of duct work of varying shapes, sizes and weights. The heaviest lifting required was around 40 pounds.
3. On October 22, 1999, plaintiff was working with co-employee Mike Lynch, who was above the floor in a scissor jack. Plaintiff was standing on the floor. A steel duct jack, which is used for raising up materials, and which was about 16 feet tall, tilted and began falling, pushing the two platform forks up into the air. Mike Lynch caught the jack and yelled to plaintiff to "watch out." One of the raised platform forks of the duct jack slightly struck plaintiff in the lower back and he fell to the floor. Mike Lynch was only slightly bruised from catching the weight of the duct jack.
4. Ray Cameron, the project manager and plaintiff's supervisor, arrived at the scene within a couple of minutes. Plaintiff told Mr. Cameron that he was more scared than hurt. Although plaintiff told Mr. Cameron that the duct jack had hit him hard in the lower back, when plaintiff lifted his shirt, revealing his lower back, Mr. Cameron did not see any obvious signs of injury. However, since plaintiff mentioned that he had been stuck hard, he was advised to go to the hospital.
5. Plaintiff was taken to Raleigh Community Hospital where plaintiff's wife met him at the hospital. When she looked at his back where he said he was struck, she only saw an area which appeared to be flushed, which she thought was a bruise.
6. Plaintiff was seen by Dr. Randall Best, the emergency room physician. Dr. Best ordered x-rays of plaintiff's lumbar spine, which were negative for fracture. Although his notes do not reflect any visible sign of injury, based upon the history of blunt trauma given by plaintiff, Dr. Best assessed a back contusion and neck strain. Dr. Best gave plaintiff a prescription pain medication and took him out of work for the next three days.
7. Plaintiff went back to work on or about October 26, 1999. He did insulation of duct work, with brush and plastic and did not perform any heavy lifting for the next few days. He earned the same or greater wages as he earned on October 22, 1999.
8. While plaintiff denied any significant pre-existing medical conditions, and specifically denied he was diabetic, his medical records document extended treatment for diabetes and polyarticular arthritis and gout which could have produced symptoms similar to those which plaintiff now contends are related to the October 22, 1999 incident.
9. Plaintiff was examined by Dr. Lyle Parker, a family physician, on October 25, 1999. Dr. Parker did not note any visible signs of injury to plaintiff's back, but based upon the history given and plaintiff's subjective complaints of pain, he assessed plaintiff with a lumbosacral strain. Dr. Parker also noted that the radiologist report showed minor degenerative changes on the x-ray. Thus, Dr. Parker also diagnosed Plaintiff with degenerative disc disease which had developed over time. He did not take plaintiff out of work, but gave him restrictions of no lifting over 30 pounds and no pulling or pushing over 20 pounds.
10. Plaintiff was seen by Dr. Parker again on November 1, 1999, when plaintiff continued to complain about his back. Dr. Parker wrote him a note to be out of work for 3 days. However, plaintiff returned to work to his regular duties.
11. Plaintiff's last visit to Dr. Parker was on November 23, 1999. At that visit, Dr. Parker referred plaintiff to Dr. Paul Burroughs, at the Bone Joint Surgery Clinic, for further assessment of plaintiff's back.
12. Dr. Parker has not seen plaintiff since the visit of November 23, 1999. Dr. Parker has testified that the incident of October 22, 1999, when plaintiff was struck by the duct jack, caused a lumbosacral strain, a muscular injury. He also raised the possibility that plaintiff's pre-existing psoriasis, a gouty arthritis, could account for some of plaintiff's back pain, but rendered no definite opinion in that regard. Dr. Parker defers to the opinion of other treating specialists as to the extent of plaintiff's injury and any work restrictions.
13. On November 30, 1999, plaintiff was examined by Dr. Paul Burroughs. Plaintiff complained of neck and back pain and numbness in both legs and his left arm. Dr. Burroughs' physical examination did not reveal any significant findings, but due to the plaintiff's history of injury and his complaints, Dr. Burroughs ordered an MRI. Plaintiff did not mention his diagnosis of diabetes to Dr. Burroughs.
14. Plaintiff saw Dr. Burroughs again on December 15, 1999. The MRI results showed a very small central disc herniation at L5-S1, with no evidence of nerve root compression, which was not related to the October, 1999 incident. Dr. Burroughs assessed plaintiff at that time with resolving low back and neck pain and feet numbness of unclear origin which was not consistent with a disc problem, but instead was the result of a disease process separate and apart from any back injury. Dr. Burroughs was unaware of the plaintiff's diabetes, which causes similiar complaints of numbness.
15. During this time, plaintiff continued working. He performed his regular duties as a sheet metal journeyman through December 23, 1999. At that time, he ceased working due to a plant-wide lay-off. When plaintiff returned to work around January 3, 2000, he complained to his supervisor Ray Cameron that he was in constant pain and could not do his regular job. By this time, plaintiff had consulted a lawyer. Plaintiff was placed on light duty, and assigned to work in the office, answering telephones.
16. Nevertheless, on January 12, 2000, when Plaintiff returned to see Dr. Burroughs, plaintiff reported significant improvement in that his neck and leg pain and leg numbness were gone, though he still had back pain. Despite the improvement, Dr. Burroughs gave Plaintiff a note to continue on light duty work.
17. Plaintiff returned to see Dr. Burroughs on February 21, 2000 with new complaints of numbness in his legs, and pain after sitting for a while, and a weight loss of ten pounds over the last month. Due to these new complaints and to his concerns about a possible underlying disease process unrelated to the October 1999 incident, Dr. Burroughs referred plaintiff to Dr. Charles Matthews for a neurological evaluation.
18. Dr. Charles Matthews saw plaintiff in March 2000, and ordered an MRI of plaintiff's brain, to rule out multiple sclerosis as a possible source of plaintiff's complaints. The brain MRI ruled out multiple sclerosis. Dr. Burroughs concluded that plaintiff's unusual symptoms during April and May 2000 including numbness and alleged inability to even walk, were probably due to vasculitis and not related to any job injury. He referred plaintiff for further evaluation to Dr. Kapil Rawal but suggested that this evaluation be submitted on plaintiff's private insurance as it was not a work related condition. He deferred any opinion as to return-to-work status to Dr. Rawal.
19. Plaintiff continued working in the employer's office on light duty status from January 2000 into April 2000. On April 23, 2000, plaintiff was laid off as part of a general reduction in force.
20. One day later, on April 24, 2000, plaintiff was examined by Dr. Kapil Rawal. Plaintiff presented himself as being in severe pain, limping and crying and complaining of numbness in his legs. Dr. Rawal determined that the peripheral neuropathy was most likely due to elevated glucose levels from diabetes. Dr. Rawal assessed plaintiff with a soft tissue injury to his lower back caused by the incident of October 22, 1999.
21. Dr. Rawal suggested a treatment plan of epidural steroid injections. The first injection was administered to plaintiff on April 28, 2000 and gave him good relief. Another injection was given on June 8, 2000 and also gave plaintiff good relief. Plaintiff's last visit to Dr. Rawal was on June 22, 2000, at which time plaintiff's soft tissue injury had improved dramatically surpassing an earlier assessment of 80-90% improvement. Plaintiff complained that day of head shakes, which Dr. Rawal testified are unrelated to the back injury.
22. Plaintiff abruptly ended his treatment with Dr. Rawal and has not returned since his June 22, 2000 appointment, so that Dr. Rawal could determine whether plaintiff was at maximum medical improvement. However, Dr. Rawal has testified that in his opinion, by the end of June 2000, plaintiff had improved enough to return to work in sheet metal fabrication. The only restriction Dr. Rawal placed upon plaintiff was that he not work at heights, due to non-work related complaints of dizziness.
23. Plaintiff was also examined by Dr. James Fulghum, who saw him on May 5, 2000. Dr. Fulghum found nothing remarkable upon his examination to explain Plaintiff's complaints which he found were not related to the October incident.
24. Plaintiff has been treated at least since June 1998 by Dr. David Bright at Durham Internal Medicine. In June 1998, Dr. Bright treated plaintiff for complaints of fatigue. He also noted plaintiff's history of gout and assessed diabetes. Dr. Bright saw plaintiff for follow-up of his diabetes on September 29, 2000.
25. The greater weight of the medical evidence, establishes that plaintiff's incident of October 22, 1999 resulted in a soft tissue injury or muscle strain to his lower back causing lower back pain which took several months to resolve. The medical evidence, including testimony from Dr. Rawal and the medical records of Dr. Burroughs, fails to establish any causal connection between the plaintiff's accident of October 22, 1999 and the small disk herniations shown on the MRIs. The evidence also fails to establish any causal connection between Plaintiff's complaints of extremity numbness and his injury by accident. The greater weight of the evidence shows this peripheral numbness is related to plaintiff's diabetes.
26. Although Dr. Rawal's testimony supports plaintiff's complaints of back pain, the greater weight of the competent, credible evidence fails to show that the plaintiff's injury was as extensive either in severity or duration as the plaintiff alleges. In view of the lack of medical support based on credible evidence for his ongoing complaints, plaintiff's testimony regarding his present inability to work is not persuasive.
27. As a consequence of his back pain from the soft tissue injury, plaintiff was restricted to light duty and was unable to carry out his regular job from January 2000 until his termination due to the reduction in force on April 23, 2000.
28. However, by the end of June 2000, plaintiff's soft tissue injury had improved to the point that he did not seek further medical treatment. By this time, Dr. Rawal was ready to remove lifting restrictions, and plaintiff was capable of continuing the duties of his prior employment in sheet metal fabrication or any other employment. The only restriction imposed by Dr. Rawal was that plaintiff not work at heights, a restriction that is unrelated to his compensable back injury.
29. Since his termination due to the reduction in force on April 23, 2000, Plaintiff has not looked for other employment. His failure to seek suitable employment after the end of June 2000 is not supported by the medical evidence and is not justified. None of the examining physicians has indicated that plaintiff was unable to return to his prior employment or any other employment after June 2000 due to his lumbar soft tissue injury.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On or about October 22, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with the Defendant-employer, when he was slightly struck in the lower back by a raised platform fork of a duct jack which was tilting over. As a consequence of this accident, plaintiff sustained a soft tissue injury to his lower back. N.C. Gen. Stat. § 97-2(6).
2. As a consequence of his soft tissue back injury, plaintiff was unable to earn wages in the same or any other employment from April 23, 2000 and continuing through the end of June 2000, and is entitled to benefits during this period at the maximum compensation rate of $560.00 based on an average weekly wage rate of $915.79. N.C. Gen. Stat. §97-29.
3. Defendants are responsible for providing all reasonably necessary medical treatment for plaintiff's soft tissue lumbar injury. This includes the treatment rendered through June 22, 2000 by Dr. Kapil Rawal, which was helpful in giving plaintiff pain relief. N.C. Gen. Stat. §§ 97-2(19), 97-25.1.
4. The greater weight of the evidence shows that plaintiff has failed unjustifiably to seek appropriate employment, even though no physician has indicated that he is incapable of returning to his prior or any other employment due to his back injury. N.C. Gen. Stat. § 97-29.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $610.55 per week from April 24, 2000 and continuing through June 30, 2000 and no further as temporary total disability compensation. Such benefits having accrued are to be paid in a lump sum, subject to the attorney's fee.
2. Defendants shall pay all medical expenses incurred by plaintiff for reasonably necessary medical treatment rendered for his lumbar soft tissue injury, including the treatment rendered through June 22, 2002 by Dr. Rawal.
3. A reasonable attorney's fee of twenty-five percent of the compensation awarded to plaintiff herein is approved for his attorney. Twenty-five percent of the lump sum due plaintiff shall be deducted there from and paid directly to his counsel.
4. Defendants shall pay the costs, including the expert witness fees previously approved.
This the ___ day of August 2002.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/______________ RENE C. RIGGSBEE COMMISSIONER
DISSENTING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER